### STATE ex FINNEGAN v. CINCINNATI (city) et

Ohio Common Pleas, Hamilton Co

Decided Oct 25, 1937

Bert H. Long, Cincinnati and Eckert & Eckert, Cincinnatti, for plaintiff.
John D. Ellis, City Solicitor, Cincinnati, and Nathan Solinger. Asst. City Solicitor, Cincinnati, for defendants.

## OPINION

By ALFRED MACK, J.

On October 16, 1936, the President of the United States delivered an address at the stadium of the University of Cincinnati. To afford ample protection for his security members of the police force were assigned to duty on that occasion. As there was not a sufficient number of members of the police force to afford the desired protection, members of the fire department were detailed for police duty on that occasion, under the provisions of §74-4 of the Ordinances of the city of Cincinnati. Joseph R. Finnegan was not on duty in the fire department on that day and consented to be assigned on that occasion to police duties at the stadium. There was a very heavy rain and in addition to such inclemency the weather was unusually cold.

When Finnegan returned home from the University he was drenched to the skin. He had on low shoes and they were full of water, and his uniform, which was heavily padded, was wet clear through to the waist line and his underwear. In the evening he evinced that he had contracted a cold but refused his wife's advice to have a doctor. During that night he was feverish and sick and was given aspirin and medicine by his wife. Next morning he went to work despite his wife's advice. During that day he consulted his doctor, who advised him to go home and remain in bed and take medicine which he had prescribed for him to bring down his temperature. He then had an acute condition. At noon on Saturday the doctor was called and finding that Finnegan had acute bronchial pneumonia, ordered him to the hospital. Finnegan died of such acute pneumonia on November 8th.

Relator, the widow of Finnegan, who was properly designated as beneficiary, made claim to the Board of Trustees of the Pension System of Cincinnati for death benefits payable for accidental death, under §20-45 E of the Ordinances of Cincinnati. There was no question that Finnegan was in good standing under the provisions of such pension system. The claim was rejected on the ground that the relator was not entitled to payment of benefits for death by "accident" under the provisions of said ordinance.

An alternative writ of mandamus having been granted, the cause was submitted to the court on the pleadings and evidence establishing the facts hereinbefore detailed, and upon the arguments and briefs of counsel.

Whether the death of Finnegan was "the natural and proximate result of an accident occurring at some definite time and place" while he was in the actual performance of duty is the sole question to be determined herein.

A proper determination of said question can only be had by considering the character of the pension system established by the ordinances of Cincinnati and as shown by the terms thereof. There are five different benefits payable under the pension system and which are in the ordinances characterized in black type as follows:

A. Service retirement allowance.

B. Ordinary disability retirement allowance.

C. Accidental disability retirement allowance.

D. Ordinary death benefit.

E. Accidental death benefit.

It will not assist a determination of the case by considering "A" which relates to retirement at the age of seventy, "B" which relates to permanent mental or physical incapacity for further performance of duty, and "C" which relates to total and permanent incapacity for duty as a natural and proximate result of an accident while in the actual performance of duty at some definite time and place. However "D" and "E" should in our opinion be fully considered in arriving at a conclusion in the instant case. They are as follows:

"D. ORDINARY DEATH BENEFIT (1) Upon the receipt of proper proofs by the board of the death of a member in service which is not the result of an accident in the actual performance of duty, as defined in Paragraph E (1) of this section, there shall be paid to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the board, or if there be no such designated person then to his legal representative:

"(a) His accumulated contributions.

"(b) A benefit equal to a lump sum payment of fifty per centum of the compensation received by the employee during the year immediately preceding his death."

"E. ACCIDENTAL DEATH BENEFIT. (1) If, upon the receipt of proper proofs by the board of the death of a member in service indicating that such death was the natural and proximate result of an accident occurring at some definite time and place

while the member was in the actual performance of duty the board shall decide that the death was the result of an accident in the performance of duty and not caused by wilful negligence on the part of the member, there shall be paid:

"(a) The amount of his accumulated contributions to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the board, or if there be no such designated person then to his legal representative and

"(b) A pension of one half of the average final compensation of such employee to be paid to his widow, if he leaves a widow, to continue during her widowhood."

It is established beyond dispute by the evidence that on the morning of October 16, 1936, Joseph R. Finnegan was in perfect health. It is also undisputed that on the occasion in question he was on duty as a police officer under the direction of a superior officer. That he was not compelled to perform such duty does not affect his status. Under well established principles of law, in his performance of duty at the stadium on October 16, 1936, he was pro hac vice a police officer both under the ordinances of the city of Cincinnati and by reason of his being subject to the direction of an officer of the city of Cincinnati.

That Finnegan's death from pneumonia was the result of the elements as they affected him on October 16, 1936, at the stadium of the University of Cincinnati, and while he was in the actual performance of duty cannot be disputed. Still the question recurs—Was such death the result of "an accident" within the terms and meaning of said paragraph E of said ordinance?

Both at the argument and in their briefs counsel for the respective parties have cited and discussed at length numerous authorities, which, however, arise under laws or provisions with relation to workmen's compensation. As pointed out in Bradbury's Workmen's Compensation, and Honnold on Workmen's Compensation. such laws or provisions employ the terms "injury," "accidental injury" or "injury by accident." In view of the particular language employed in the ordinance under discussion it will serve no purpose to discuss the cases cited by counsel. Indeed, in many instances conclusions have been reached by some courts diametrically opposed to conclusions reached by other courts under almost exactly similar laws or provisions with reference to workmen's compensation.

Nor will it assist a determination of instant case to discuss cases arising under health or accident insurance policies, for the reason that they arise out of express contracts between the insurer and the assured, and often there is an exact definition of "accident" as meaning an occurrence effected solely and exclusively by external and violent means.

Pension provisions like those in instant case have a humanitarian design, and while they are to be construed liberally, yet a court is not at liberty to be influenced by sympathy as against the express language of such provisions. Nor should the court be influenced by the argument on behalf of defendants that if the claim of plaintiff prevails it will result in "a virtual demolition of the city's retirement system as it was originally established in 1931 and has since been maintained," because, obviously, an occurrence like the one in instant case is a most rare one, and therefore the argument of dire consequences rests upon an exaggerated assumption. Moreover, if plaintiff prevails in instant case and it is desired to exclude a pension in said paragraph E under similar circumstances, it is within the power of the proper authorities to accomplish such exclusion by amendment of the ordinance.

In our opinion a determination of the matter at issue requires only a consideration and discussion of the language of the ordinance. Paragraph D relates to a benefit from ordinary death, whereas paragraph E relates to a benefit from accidental death. Paragraph D awards the benefit for death of officer while in service from disease or any cause, accidental or otherwise, which is not the result of an accident in the actual performance of duty as defined in paragraph E.

Under paragraph E the death must be the natural and proximate result of an accident while the officer is performing a duty. It must be the natural and proximate result of an accident occurring at some definite time and place while the officer was in the actual performance of duty.

In our view Finnegan died from a disease, which disease of pneumonia was contracted while he and all his fellow officers were subjected to the same elements of rain and cold. That his body was not immune from an infection which did not affect his fellow officers is one of those unaccountable misfortunes that often befall one of

a group in the same situation and under the same circumstances and conditions, but such misfortune, in our opinion, is not the natural and proximate result of an accident occurring at some definite time and place. It seems to us that the phrase "at some definite time and place" has been used purposely and advisedly to exclude disease incurred as the result of performance of duty. Concisely stated, it is our conclusion that the disease of pneumonia in instant case not having been traumatically incurred, is not the natural and proximate result of an accident at a definite time and place, but rather is the ordinary death contemplated under the provisions of paragraph D of the ordinance.

Let us state the reason for our conclusion in another way:

All performing police duties on the occasion in question were equally subjected to the same inclement weather as Finnegan. He alone contracted the disease of pneumonia. We can only explain why this happened when we succeed in our search for what a writer succinctly terms the "keys to life's laboratory." Braving rain and cold by all performing duties on the occasion in question should not be characterized as an accident because as to a particular one it resulted in fatal disease. So it seems to us that the natural and only deduction is that Finnegan's death was a lamentable misfortune, rather than the result of an accident.

While it is true that every accident is not necessarily caused by external and violent means, and although every accident may lead to an unfortunate result, nevertheless every unfortunate result is not necessarily caused by an accident. This is because physiological and psychological causes may also result in misfortune and often in death.

While **Casualty Co. v Johnson, 91 Oh St 155**, is not directly in point, because it concerns an accident policy, and also because of the peculiar language of the ordinances under consideration, nevertheless the reasoning of the court in that case, per Nichols, C. J., is cogent. At page 158 he said:

"It can hardly be asserted that the act of voluntarily entering a bathtub filled with cold water is an accident. If some one had pushed the insured into a tub so filled, or for that matter, into a pond of cold water, and the results had followed, which ensued when he voluntarily committed his body to the water, then the act would have been an accident in the ordinary acceptation of the term."

At page 159 he said:

"In every moment of our conscious or sleeping hours we are all possible victims of errors of the human system, respiratory, circulatory or digestive; errors that our physicians would term accidents of nature. Even the diseases which afflict humanity are frequently the result of accidents pure and simple. As has been expressively said, nature slips a cog and the well man is invalidated.

"The separation of injuries, occasioned by accidental means from those occasioned by means non-accidental, is not free from difficulty, and an attempt to logically analyze every supposable case of this character, and differentiate along consectary lines would lead to some contradictions."

That the city council in enacting the ordinance in question did not regard the effect of unusual exposure to the elements as an accident seems to us evident when we examine the Administrative Code of the city of Cincinnati. In §7 of such Administrative Code there is an express provision for payment of salary to one performing police duty "involving extraordinary risk and danger or unusual exposure to the elements."

It follows from the foregoing that plaintiff is not entitled to death benefit under paragraph E of the ordinance in question, but only to the benefit under paragraph D hereof, and such judgment will be accordingly entered.